**Gerald D.W. North** (admitted *Pro Hac Vice*)
Gerald D.W. North & Associates
125 S. Wacker Dr., Suite 1000
Chicago, IL  60606
Email:  northlaw2@yahoo.com
Tel: (831) 224-0007

**Dennis L. Hall** (*Pro Hac Vice Application to be filed*)
Dennis L Hall, Attorney, pllc
3033 North Central, Suite 810
Phoenix, Arizona 85012
Email: dennis@dlhall.net
Tel: (480) 596-4045

**Cari A. Cohorn** (SBN 249056)
Cohorn Law
100 Pine St., Suite 1250,
San Francisco, CA 94111
Email: cohorn@cohornlaw.com
Tel: (415) 993-9005
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Paul Mula Jr., a California resident, individually and on behalf of the Ogier Revocable Trust Dated August 7, 2000, and all sub-trusts thereof, and on behalf of the Helene Mula-Stouky Trust Dated November 24, 1997,<br><br>                Plaintiff,<br>v.<br><br>Helene Mula-Stouky, a California resident, both individually and as former Successor Trustee of the Ogier Revocable Trust Dated August 7, 2000 and former Putative Trustee of the Helene Mula-Stouky Sub-Trust thereof, *et al.*,<br>                Defendants. | Case No. 5:21-cv-04540-BLF<br><br>**RESPONSE TO MOTION TO REVOKE *PRO HAC VICE* ADMITTANCE OF GERALD D. W. NORTH**<br><br>Date:  July 21, 2022<br>Time:  9:00 a.m.<br>Courtroom:  3<br><br>Complaint Filed:  June 11, 2021 |

Six days after the Court granted *pro hac vice* admission to Mr. North, the nine defendants represented by Ms. Bonnie Ross filed this motion to revoke it. The motion offers a twisted portraiture of a lengthy and distinguished legal career, and Ms. Ross' attempts to denigrate it, using false or misleading claims and outlandish *ad hominem* attacks, is as baffling as it is sanctionable.

North previously was admitted *pro hac vice* in this District in *Clear-View Technologies, Inc. v. Rasnick, et al.*, Case No. CV13-02744-BLF in 2015, has twice been admitted *pro hac vice* in the Central District of California since 2003, and has appeared *pro hac vice* in districts across the country in the course of his 47-year career. North Dec, ¶ 9. He is a member in good standing of the bars of the U.S. Supreme Court, the U.S. Courts of Appeals for the Ninth and Federal Circuits, the U.S. District Court for the Northern District of Illinois (general and trial bar), and the Supreme Court of Iowa. *Id.*, ¶ 8; ECF 87-1, Ex. E. When he retired in 1996 (at age 45), he was a nationally known antitrust trial lawyer who appeared in, or led, some of the leading antitrust cases of the time, including the government and private antitrust litigations that led to the breakup of the Bell System; the Sealy antitrust litigation; the decade-long patent/antitrust litigation that invalidated the Gore-Tex™ patent; the S&L crisis-born litigation against Craig Hall/Hall Financial; the multi-district antitrust class action litigation against the major title insurers; and the multi-national litigation over the patent for the nitinol stent for AAA repair. *Id.*, ¶¶ 3-6, 20 n.2 (link). When North resumed practice in 2003, it was to represent the original inventor of the technology for mobile point-of-sale [later commercialized by Square [now Block], Inc. *Id.*, ¶ 7.

Seldom has undersigned counsel been called upon to address such a completely baseless motion. Relying on an old disciplinary proceeding that began in 1998 and ended in 2001 (**not** 20**11**), and reciprocal proceedings that ended in 2005, resulting in a brief, long-since expired, suspension, and two even briefer, also long-since expired, reciprocal suspensions, and employing date-trickery to make it appear the discipline was more recent, Ross' motion contains one false or misleading

averment after another, such as: "[T]he states where North was once licensed to practice law have all revoked or suspended that privilege" (ECF 87 at 3); "[T]he Iowa Supreme Court…revok[ed] [North's] license" (ECF 87 at 5); "The Arizona Supreme Court imposed a long-term suspension [on North] which is still in place" (ECF 87 at 4-5)," and outrageous *ad hominem* remarks by Ms. Ross, such as: "[I]f [North] were to apply [to the Ninth Circuit] today, he would not be qualified for admission…" (ECF 87 at 6); "If [North] were permitted to appear in this case, it would constitute the unauthorized practice of law" (ECF at 5); and "Essentially, North is an unlicensed non-lawyer." (*Id.*).

But if what Ross' motion says is shrill, what it doesn't say is deafening. It purports to address the standard for denying *pro hac vice* admission without once citing the guidance provided by the Ninth Circuit in *United States v. U.S. Dist. Court for the Dist. of Nev. (In re United States),* 791 F.3d 945, 956-57 (9th Cir. 2015). See *infra*, at 8-9. It blinks the Ninth Circuit's thorough description of the 2001 Arizona suspension in *In re North*, 383 F.3d 871 (9th Cir, 2004), in order to support its false narrative. See *infra,* at 6. And it fails to mention the Ninth Circuit's decision in 2005 not to impose *any* prospective reciprocal discipline on Mr. North, after fully considering the very suspensions on which it relies – the short Arizona suspension (6-months plus 1 day) in 2001 and much shorter reciprocal suspensions in Iowa (60-days) in 2001 and Illinois (3-months) in 2004 – all based on North's settlement of a multi-party product liability case in 1993 - *nearly 30 years ago*:

> North…is a respected and skilled antitrust trial lawyer with a national law practice. [H]e often appears pro hac vice in various courts throughout the country. North is counsel of record in this court in pending consolidated appeal *Virtual Fonlink, Inc. v. Bailey*, Nos. 04-55408, 04-55414…. [North] was faced with a difficult ethical and professional dilemma in the product liability settlement…. It is likely that the other jurisdictions that imposed shorter suspensions considered the dilemma North faced

as a ground for more lenient treatment…. Given the circumstances of the underlying conduct and North's professional record…this court should impose the same length of discipline as imposed by the Arizona Supreme Court, but impose it *nunc pro tunc* with the term already served, and allow North to retain his membership in the Ninth Circuit Bar.

*In re North*, No. 03-80064, Amended Report and Recommendation, August 22, 2005, *adopted without modification* (9th Cir., October 26, 2005), pp. 8, 15-16, and 9, a true and correct copy of which is annexed as **Ex. "C"** to North's declaration.

Ross' motion then scurrilously interjects irrelevant and inaccurate details of Chapter-11 proceedings related to a 10-year divorce that ended in 2006; irrelevant and untrue allegations about his involvement in Clear-View Technologies, Inc., again using date-trickery to make it seem North was involved in matters alleged in a 2011 (**not** 20**17**) lawsuit, when he did not even arrive in San Jose as an officer until two weeks after the lawsuit was filed; and a grab-bag of other personal aspersions. But she fails to allege a single instance of inappropriate conduct in this case, or the *Clear-View* litigation, except for her frivolous reliance on a post-trial motion this Court itself heard in that case. A federal court is not intended to be a forum for mudslinging, name-calling, and "privileged" defamation, but Ross has managed to turn it into just that. North's detailed declaration addresses the facts and places them in the contexts in which they arose. This response addresses the legal and professional misconduct issues involved in its filing.

### I. STATEMENT OF FACTS

The complaint was filed on June 11, 2021. Service was initially deferred because Plaintiff was in pre-existing settlement discussions with some of Ross' clients. By August, those clients had terminated the discussions and service was made. After a motion to dismiss was filed, an amended complaint was filed, mooting the motion. Thereafter, three new motions to dismiss were filed.

Those motions are fully briefed, as is a motion to strike them for violating the Court's page limit orders. The motions are scheduled for hearings from mid-April to early June.

On February 23, North filed a motion for *pro hac vice* admission, using the form required by the Court, and attached a certificate of good standing issued by the U.S. Court of Appeals for the Ninth Circuit on February 22 (ECF 82). The motion was occasioned by upcoming Rule 26(f) and case management conferences that would require North's personal attendance as lead trial counsel under Civil L.R. 16-3. The Court granted the motion on February 24 (ECF 83).

### A. The Stale Professional Allegations

Ross claims "[North] failed to disclose discipline imposed on him by three state court [*sic*] where he was once admitted" and asserts that "[those states]…have **all** revoked or suspended that privilege." (ECF 87 at 3). Her claim is highly misleading because Civ. L.R. 11-3 does not require the disclosure and her statement is false because North was reinstated in one of the three over 20 years ago and remains suspended in the other two only because he declines to reinstate. See *infra* at 6. When North resumed practice in 2003, some reciprocal disciplinary proceedings occasioned by the 2001 Arizona suspension were still ongoing, so he voluntarily made a detailed disclosure in his *pro hac vice* applications. North Dec, ¶ 12, and **Ex. "A"** thereto. But by the time he applied in *Clear-View,* and in this case, 10 and 17 years, respectively, had elapsed since the last reciprocal proceeding – the one in the Ninth Circuit that Ross failed to mention – had ended.

All of the proceedings were based on North's 1993 settlement of a product liability case he inherited from a retiring partner. The case involved carpal tunnel syndrome claims against a keyboard manufacturer by fifty-three directory assistance operators who had opted out of a national class action. North determined that the case had a fatal flaw. He nonetheless managed to negotiate a favorable settlement. He concluded the settlement without the consent of three clients who had moved without notifying his firm, before an expected adverse ruling on a pending summary

judgment motion. The choice was between actual pecuniary harm to the fifty consenting clients, or theoretical harm to the three absent clients, each of whom had only "whiplash" claims. North's judgment, that not taking the settlement would have been disastrous for the great majority of clients who had approved, was confirmed when the class action ended in a defense verdict. *Id.*, ¶ 21.

North had never before been the subject of discipline, but in 1998, five years after the settlement, Arizona began a case based on it, adding in two minor charges that ordinarily would have been disposed of informally. By then, North had been retired for three years and lived in Monaco. The result was a 6-month plus one day suspension on March 28, 2001 that expired on September 29, 2001. *Id.*, ¶¶ 21-24. Reciprocal proceedings ensued. No state gave full credit to the Arizona suspension. The Iowa Supreme Court imposed only a 60-day reciprocal suspension on December 17, 2001 and, contrary to Ross' false claim that it "revoked" his license, *reinstated* him on February 15, 2002. Illinois imposed a 3-month reciprocal suspension effective October 15, 2004. The suspension period expired on January 15, 2005. The Arizona and Illinois suspensions are still extant, but only because North declined to reinstate. *Id.*, ¶¶25-26. As noted by the Ninth Circuit in *In re North*, 383 F.3d 871, 873 (9th Cir. 2004), a year before its 2005 decision on reciprocal discipline, the Arizona suspension "expired in September 2001," North was "eligible for reinstatement to the Arizona Bar," and his decision not to reinstate was "a personal judgment about the desirability of state bar membership," because "his practice is entirely based in federal court…."

No federal court imposed *any* prospective discipline. The Executive Committee of the U.S. District Court for the Northern District of Illinois declined to impose any reciprocal discipline at all and North remains a member in good standing of both its general and trial bars. North Dec, ¶ 16, and Ex. **"B."** thereto. And, as noted, the Ninth Circuit imposed only a *nunc pro tunc* suspension and North remained, and remains, a member in good standing of its bar, as he does in the U.S. Supreme Court, which ignored the state suspensions. North Dec, ¶ 27.

### B. The Irrelevant Personal Allegations

Many of Ross' personal allegations stem from a ten-year long divorce, and related Chapter-11 proceedings, that concluded in 2006. These allegations are addressed in North's declaration at ¶¶ 33-38. Other such allegations stem from North's involvement as an independent director, briefly as an officer, and later as trial counsel for Clear-View. They are addressed in his declaration at ¶¶ 39-46. Both sets of allegations represent an effort by Ross to build an *ad hominem* argument on snippets taken out of context. Almost every factual averment in the motion is something Ross knew, or should have known, was either false, seriously misleading, or rank speculation.

### II. ARGUMENT

### A. The Cited Cases are Inapposite

None of the cases cited by Ross support her motion. In *Lasar v. Ford Motor Co.*, 399 F.3d 1101,1116 (9th Cir. 2005), the local rules required an attorney to disclose in his *pro hac vice* application whether he had "ever been held in contempt, [or] otherwise disciplined by any court for disobedience to its rules or orders…." There is no comparable local rule here. In *In re Bundy*, 840 F.3d 1034, 1036 (9th Cir. 2016), the facts that justified denial of *pro hac vice* admission included the attorney's failure to disclose that he was currently involved in an ethics proceeding before the D.C. Bar and that in numerous cases he had been denied *pro hac vice* status or otherwise sanctioned for violating various local rules, among other things. Here, there are no ongoing disciplinary proceedings to be disclosed and North has *never* been denied *pro hac vice* admission. North Dec, ¶¶ 9, 12. *United States v. Panzardi Alvarez*, 816 F.2d 813, 817 (1st Cir. 1987) does not support Ross' motion. There, the First Circuit *reversed* the denial of *pro hac vice* admission in a criminal case where the denial of admission was based solely on the attorney's violation of the district's one case per year rule for *pro hac vice* applicants. There is no such hard-and-fast rule here and no conceivable abuse of the privilege of seeking *pro hac vice* admission. North last appeared *pro hac*

*vice* in this District seven years ago. North Dec, ¶ 9. And in *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31 (6th Cir. 1984), the ground for revocation was the existence of undisclosed conflicts of interest by the attorney. North's representation of a single plaintiff entails no possible conflict of interest, whereas Ross' representation of nine clients may entail a conflict, because representation of any one of them may materially limit her ability to represent the others.

### B. The Motion Fails to Meet the Standard Articulated by the 9th Circuit

While conceding that the grant or revocation of *pro hac vice* admission is committed to the discretion of the Court (ECF 87 at 4), the motion fails to cite the Ninth Circuit's most recent discussion of guidelines for the exercise of that discretion. In *Dist. of Nev., supra,* 791 F.3d at 956-57, the Ninth Circuit found that the district court had abused its discretion to deny *pro hac vice* applications. It first focused on whether the district court had properly interpreted the applicable local rule. It then stated that admission to practice creates a "presumption" in favor of *pro hac vice* admission and a district court must articulate a valid reason to deny it. See *United States v. Ries*, 100 F.3d 1469, 1472 (9th Cir.1996) ("[i]n denying a *pro hac vice* application, the judge must articulate his reasons, for the benefit of the defendant and the reviewing court"). It went on to discuss what constitutes a valid reason for denying *pro hac vice* admission in a civil case, noting that "[s]ome of our sister circuits permit district courts to deny an application for *pro hac vice* admission only in rare circumstances [,] citing *In re Evans*, 524 F.2d 1004 (5th Cir. 1975) and *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir.1997) ("Absent a showing of unethical conduct rising to a level that would justify disbarment, the court must admit the attorney."). While it declined to specify the factors that should inform a district court's exercise of discretion, it attempted to define the "outer limits of that discretion [,]" citing *Roma Co. v. Russo Constr. Co.,* 96 F.3d 566, 577 (1st Cir.1996) (district court abused its discretion where decision to deny *pro hac vice* admission was "based on criteria that are not set forth in writing, that do not

reasonably support its action, and that do not appear to respond to any general policy of the District...."). See also *United States v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990), *cert. denied*, 500 U.S. 920 (1991) ("Once admitted, *pro hac vice* counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.").

### C. The 9th Circuit's Reciprocal Discipline Decision Eviscerates the Motion

North is a member in good standing of the Iowa Supreme Court's bar (ECF 87-1, Ex. E), and could resume active status any time. North Dec, ¶¶ 25-26, n.1, and Ex. **"E"** thereto. But there is no need for him to do so. The Ninth Circuit, on whose certificate his application for *pro hac vice* admission was based, *itself* reviewed *all* of the 2001-04 suspensions, as well as the underlying 1993 conduct, and *itself* determined that no prospective reciprocal discipline was warranted. North Dec., ¶ 17. Defendants' attempt to go behind the certificate, based on changes in North's state bar memberships, is frivolous, see *In re Poole*, 222 F.3d 618, 620 (9th Cir. 2000) ("Once federal admission is secured, a change in circumstances underlying state admission…is 'wholly negligible' on the right to practice before a federal court."); Ross' failure to cite *Dist. of Nev*. in her motion is problematic under Rule 3.3 (a)(2) of the Rules of Professional Conduct, see *Davis v. TWC Dealer Group, Inc.*, 41 Cal.App.5th 662, 677-78 (2019); and her failure to disclose the Ninth's Circuit's decision is *In re North*, No. 03-80064, *supra*, is a stark violation of Rule 3.3(a)(1).

### D. Ross' *Ad Hominem* Attacks are Sanctionable

Ross is trying to use the Court's process as a shield for what would otherwise be defamatory conduct, dwelling on isolated personal incidents to cast a derogatory light on North. Such conduct has no place in a federal court. *United States v. Young*, 470 U.S. 1, 9 (1985) ("inflammatory attacks on the opposing advocate" have "no place in the administration of justice" and "a trial judge should deal promptly with [them]"); *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1308 (11th

Cir. 2002) (per curiam) ("[A]n attorney who submits . . . *ad hominem* attacks directed at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it."). Worse, she accompanies her attack with multiple false or misleading statements such as falsely stating that North's Chapter 11 petitions spanned ten years (they spanned three); or misleadingly asserting that the bankruptcy court in one of his two actual Chapter-11 cases appointed a trustee, without disclosing that the trustee was later discharged, all assets returned to North's custody, and his plan of reorganization confirmed; or falsely asserting he has a "felony" conviction on his record, failing to disclose it was a "wobbler" that was later set aside. Even if all her statements were true, none would provide a ground upon which *pro hac vice* admission could be revoked. But they are not true. "At minimum, a court's decision to deny *pro hac vice* admission must be based on criteria reasonably related to promoting the orderly administration of justice…. or some other legitimate policy of the courts" *Dist. of Nev., sura,* 791 F.3d at 957. That is the standard the Ninth Circuit has adopted and that is the standard ignored by Ross in her motion. Multiple lies cannot overcome that basic defect.

### IV. CONCLUSION

Ross's motion should be denied, and either the entire motion should be stricken or the personal matters expurgated.

Dated: March 16, 2022    COHORN LAW

By: /s/ Cari A. Cohorn

Attorneys for PLAINTIFF