BONNIE MARGARET ROSS [SBN 178591]
 *bross@messner.com*
MESSNER REEVES LLP
160 W. Santa Clara Street, Suite 1000
San Jose, California 95113
Telephone: (408) 298-7120
Facsimile: (408) 298-0477

Attorneys for Defendants Helene Mula Stouky, individually and as former Successor Trustee of the Ogier Revocable Trust Dated August 17, 2000 and former Putative Trustee of the Helene Mula Stouky Sub-Trust thereof; Patricia M. Bye, individually, as Conservator of the Estate, as Successor Trustee of the Helene Mula Stouky Trust dated November 24, 1997, and as Successor Trustee of the Ogier Revocable Trust dated August 17, 2000; Bye & Bye Services; Alexandra R. Martin, individually; Aaron, Riechert, Carpol & Riffle, APC; Robert E. Temmerman, individually; Temmerman, Cilley & Kohlmann, LLP; Christina Smith, individually and as Conservator of the Person of Helene Mula Stouky; Howard G. Frank

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Paul Mula, Jr., a California resident individually, and on behalf of the Ogier Revocable Trust, together with the putative Helen Mula-Stouky and Paul S. Mula Jr. Trusts,<br><br>Plaintiff,<br><br>v.<br><br>Helene Mula-Stouky, a California resident, both individually and as putative trustee of the Ogier Revocable Trust Dated August 7, 2000, et al.,<br><br>Defendants. | Case No. 21-cv-04540-BLF<br><br>**REPLY TO OPPOSITION TO MOTION TO REVOKE PRO HAC VICE STATUS OF GERALD NORTH**<br><br>Judge: The Hon. Beth Labson Freeman<br>Date: July 21, 2022<br>Time: 9:00 a.m.<br>Crtrm.: 3, 5th Floor |

The response of Plaintiff's out-of-state counsel Gerald North to Defendants' motion to revoke his pro hac vice ("PHV") status shirks responsibility for his misconduct, thereby proving the Stouky Defendants' point (joined by defendants Terry Campbell Wallace and Kristofer Biorn; see Docs #89 & 91) that his admission to practice in this Court would be detrimental to the Court's interest in the ethical and orderly administration of justice. In arguing that he is not responsible for his own misconduct, he ignores the standard applied to such motions that allows the courts to exercise their discretion to deny pro hac vice admission to promote their interest in the "ethical and orderly administration of justice;" *In re Bundy*, 840 F.3d 1034, 1042 (9th Cir. 2016) insists that the evidence of his state bar discipline record does not mean what it says; minimizes the nature of his misconduct and the impact of his misconduct on his victims; blames others, such as one of his ex-wives, for his bankruptcies; suggests that this Court's decision in a prior case was wrongly decided; misattributes a recitation of accomplishments from his distant past to a court when in fact it was his own recitation he cited; and attacks the Stouky Defendants' counsel rather than the facts and argument.

These responses reinforce the Defendants' position that in this case North is unlikely to act in a manner fostering the ethical and orderly administration of justice, such that granting of his privilege to practice before this Court should be revoked.

**I.    The facts justifying revocation of North's PHV admission are well within the Ninth Circuit's guidance on the applicable standard**

The Ninth Circuit in *In re U.S.* (9th Cir. 2015) 791 F.3d 945 articulated a loose standard for district courts considering whether to grant or deny pro hac vice admission:

> We need not announce specific factors that should inform a district court's exercise of its discretion to deny pro hac vice admission. To resolve this case, we need only define the outer limits of that discretion. At minimum, a court's decision to deny pro hac vice admission must be based on criteria reasonably related to promoting the orderly administration of justice, . . . or some other legitimate policy of the courts.

*Id.* at 957, citations omitted. This standard is not substantially different from the standard cited in

Defendants' moving papers that the court's discretion is guided by its interest in the "ethical and orderly administration of justice," which was described in *In re Bundy*, 840 F.3d 1034, 1042 (9th Cir. 2016).  The court in *In re U.S.* quoted the same rule cited in *Bundy*, that a district court is clearly acting within its discretion toward an attorney whose actions led the court to conclude that the attorney would not abide by the court's rules and practices or "be readily answerable to the court." *Id.* at fn.8.  The Ninth Circuit concluded that the district court in *Bundy* was within its discretion to reject an out-of-state attorney's PHV application. *Bundy, supra*, at 1042.  (Plaintiff incorrectly asserts that *In re U.S.* contains the Ninth Circuit's latest word on the guidelines for a district court's discretion in denying PHV status.  *In re U.S.* was issued in 2015.  *Bundy*, decided in 2016, is the more recent decision.)

In *In re U.S.*, the attorney who sought admission was an active member of a state bar. *Id.* at 957.  North, as discussed in greater detail below, is not an active member of any state bar.  Indeed, his prior admission to federal court, on which he based his PHV application in this case, was based on active membership in a state bar where he is currently unauthorized to practice law.

For this reason, combined with the behavior that indicates he is not likely to abide by the court's rules and practices, be readily answerable to the Court, or participate in the ethical and orderly administration of justice, this Court would be well within the parameters identified in *In re U.S.* in revoking his PHV status.  He has been disciplined in three states for serious misconduct, including misleading clients.  He has a criminal record of felony theft.  He flouts the rules of court, blames others for unfavorable outcomes, avoids his debts, throws his co-counsel under the bus to avoid the consequences of losing a trial, and seeks relief from the Court for poor results despite the lack of merit of his appeals.  In addition, as demonstrated by his Opposition to Defendant's motion to revoke his PHV status, he minimizes the effect of his misconduct on his client victims, and refuses to accept that this Court's decision to deny his client a new trial was correct, continuing to reargue it seven years later.  These factors provide this Court with a reasonable, articulable basis to deny him admission in this case.

/ / /

/ / /

## II. North's State Bar discipline record is based on serious misconduct in numerous cases

While this Court's rules allow the Court to admit an out-of-state attorney who has either been admitted to a state court or another federal court, the Ninth Circuit recognized that "[a]dmission to the state bar is the essential determinant of professional ethics and legal competence." *In re U.S.,supra,* 791 U.S. at 957.  North, after having been disciplined by the bodies that regulate professional conduct in three states, decided to evade their ability to regulate him by avoiding active status in all three states.  North concedes that his licenses in Arizona and Illinois are not presently active.  Although North quibbles with the terminology "suspended" versus "revoked," as to his Iowa disciplinary record, the fact remains that the Judicial Branch of Iowa, the state where he attended law school, deemed it appropriate to deny him the ability to practice law for a period of time as a result of his misconduct.  *Id*.  Although the Iowa Judicial Branch did eventually grant him the right to reactive his license, see North Decl., Exh. E, North never bothered to do so.  Nor did he reactivate his Arizona and Illinois licenses.  Thus, he is not eligible to practice law in any state and has not been so since 1997.  North Decl., ¶8.

Although this Court does not require attorneys admitted Pro Hac Vice to have active state bar licenses if they have been admitted to another federal court, North's original federal bar admission was premised on active license status in a state bar.  He claims that his first federal bar admission was by the District Court of the Northern District of Illinois.  That admission was premised on an admission to a state bar: "An applicant for admission to the bar of this Court must be a member in good standing of the bar of the highest court of any state of the United States or of the District of Columbia.  The applicant must be honest and of good moral character, and shall exhibit general fitness to practice law." ND Ill. Local Rule 83.10(a).  North claims that he was admitted to the U.S. Supreme Court in 1982.  That court's rule for admission states:

> To qualify for admission to the Bar of this Court, an applicant must have been admitted to practice in the highest court of a State, Commonwealth, Territory or Possession, or the District of Columbia for a period of at least three years immediately before the date of application; must not have been the subject of any

adverse disciplinary action pronounced or in effect during that 3 year period; and

must appear to the Court to be of good moral and professional character.

Supreme Ct. R.5.  North, who can not currently practice in any state court, would not be eligible for practice in the Northern District of Illinois or the U.S. Supreme Court were he to apply today. He should not be permitted to bootstrap his admission in this Court on a premise that is no longer valid.

Plaintiff's contention hat the court declined to impose reciprocal discipline on North in its decision in *In Re North* is both irrelevant and wrong.  It is irrelevant because the court was not considering his PHV admission in that case.  Rather, the issue was whether he should be disciplined for the misconduct that was the reason the Arizona Supreme Court disciplined him. North's Decl., Exh. C, Appellate Commissioner's Amended Report in In Re North.  It is wrong because the Commission did find that reciprocal discipline was warranted, given the circumstances of the underlying misconduct and his professional record, however, it recommended that the court should impose the same length of discipline as imposed by the Arizona Supreme Court but impose it nunc pro tunc with the term already served, and allow North to retain his membership in the Ninth Circuit Bar.  *Id*. at p. 7.

North's argument that this Court should permit him to practice PHV before it because it did so once before is unavailing, since none of the parties in the prior case for which he was admitted PHV laid out for the Court the full extend of his checkered history.

### III. North Minimizes the Nature of his Misconduct and Its Impact on his Victims

North simultaneously aggrandizes his remote past legal accomplishments (reaching as far back as 47 years ago, when he was an associate at a large law firm, to toot his own horn), and downplays discipline that occurred 17 to 24 years ago, on the grounds that the discipline was "stale."  Nothing could be more stale than his work as an associate in the 1970s and his subsequent employment in a series of now-defunct law firms.  Misleadingly, North quotes the Ninth Circuit Appellate Commission's Amended Report and Recommendation,  so as to make it appear that the Commission was describing him as "respected" and "skilled."   Exh. C to North Decl.  The

Commission, however, was summarizing North's own description of himself.  ("North presented evidence . . . that he is a respected and skilled antitrust lawyer." *Id*. at p. 8.)  Ethical lawyers do not take a court's summary of a party's evidence and pass it off as praise by the court.

North seeks to avoid responsibility to his clients in the case that resulted in three states deciding to discipline him for characterizing it as a case that he "inherited from a retiring partner," that had a "fatal flaw," as if the weakness in the case justified his settlement of the case without notice to his client or consent.  (Similarly, the instant case involves a claim that an attorney failed to provide proper notice, and characterizes such activity as fraud that constitutes racketeering.)  North labels as "minor" the charges brought against him by the Arizona bar.  It is a virtual certainty that the clients affected by these charges would not have considered them minor.  The Commission's description of them indicates that they were far from minor.  North was suspended based on the findings of the Arizona Commission that he committed 33 acts of misconduct involving nine of 53 clients that he represented in one case, one client in another matter, and four clients in yet another matter.  Amended Report, p.2, Exh. C to North Decl.  In the product liability case, he knowingly failed to disclose a conflict of interest, failed to provide information to clients to make a decision about settlement, intentionally misled his clients, failed to convey settlement offers, failed to explain the client's classification, and coerced some clients into settlement.  Etc.  *Ibid.*

Moreover, North had an opportunity to make the same arguments before the Arizona disciplinary body as he makes now, and they were as unsuccessful as they are now.  The fact that no federal court disciplined him as a result of his misconduct does not establish that the federal courts did not view the misconduct as grave; it only establishes that the federal courts did not deem it necessary to discipline him when the state courts were exercising their authority to do so.

North attributes his multiple bankruptcy proceedings to an acrimonious 10-year divorce proceeding with his second ex-wife, and takes offense that the Stouky Defendants' discussion of his maneuvering through the bankruptcy process omitted that he owned a Rolls Royce and yacht in addition to a Mercedes, and boastfully compares his Chapter 11 case to a former Arizona Governors.  North Decl.,¶¶34-36.  While he cannot recall the circumstances of a felony

{06149318 / 1}                                                                      6                                                Case No. 21-cv-04540-BLF
REPLY TO OPPOSITION MOTION TO REVOKE PRO HAC VICE STATUS OF GERALD NORTH

conviction, *id.* at ¶38, he can recall the year, make and model numbers of his luxury cars and yacht. Yet, the felony theft involved "two small checks totaling less than $9,000," a fact he offers to minimize the effect of his wrongdoing. It is apparent North will exploit others for his own gain without perceiving such conduct as an ethical shortcoming. This is not the behavior of counsel who is likely to foster the ethical administration of justice in this Court.

### IV. North's refusal to accept this Court's decision in *Clear View Technologies v. Rasnick* does not bode well

In 2015, this Court considered and denied North's attempt to set aside the judgment and procure a new trial for CVT, the failed company of Plaintiff Paul Mula, Jr. on the grounds that his co-counsel, Douglas Colt, was incompetent. 2015 WL 13298075. This court stated that it found no glaring example of gross negligence that would justify relief from the judgment against it, and denied the motion. The Defendants cited the motion as an example of North's undermining the orderly administration of justice by seeking a new trial by blaming another attorney for a bad result. North now reargues the motion in his declaration, reciting the same facts that this Court received and deemed insufficient to justify a new trial in 2015, and again blaming Mr. Colt for the loss. North Decl., ¶46. North thus demonstrates that he is unwilling to accept judicial decisions determining that his arguments lack merit. This behavior does not bode well for his participation in the orderly administration of justice in this case.

Compounding the problem, North fails to own up to defeat in the Clear View case, attempting to spin the case as a victory based on a spoliation award issued in that case. Pre-trial, Magistrate Judge Grewal issued sanctions against the Clear View defendants for intentionally destroying evidence. 2015 WL 1329075, at *7. At trial, the Court read the jury a spoliation instruction. Despite this gift to Clear View, the jury began deliberations on June 17, 2015 and returned a unanimous verdict on June 18, 2015, for defendants on all claims. 2015 WL 13298075, at *1. Incredibly, North eschews any ownership of this spectacular loss; his spin involves boasting about the spoliation order and a pre-trial settlement offer. North Decl., ¶45. Moreover, in his eagerness to avoid responsibility for losing the trial for his client, he violates the attorney-client privilege by revealing his advice to his client, the Clear View board of directors, about accepting

REPLY TO OPPOSITION MOTION TO REVOKE PRO HAC VICE STATUS OF GERALD NORTH

7   Case No. 21-cv-04540-BLF

the settlement offer.  *Ibid*.  This is precisely the kind of unethical conduct this Court can halt by refusing North the privilege of practicing before it in this case.

### V. **Conclusion**

For the foregoing reasons, the Court should exercise its broad discretion, which is amply supported by the facts, and grant the Stouky Defendants' Motion, joined by two of the three other defendants, to revoke Gerald North's Pro Hac Vice status in this case.

Dated: March 23, 2022                                MESSNER REEVES LLP

By: *Bonnie Margaret Ross*
BONNIE MARGARET ROSS
Attorneys for Defendants the Stouky Defendants