United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PAUL MULA, JR., | Case No.  21-cv-04540-BLF |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART THE STOUKY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, WITH LEAVE TO AMEND; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SUPPLEMENT HIS PLEADING** |
| v. | |
| HELENE MULA-STOUKY, et al., | |
| Defendants. | |
| | [Re:  ECF 66, 146] |

Plaintiff Paul Mula, Jr. ("Paul Jr.") sues members of his family, court-appointed conservators and attorneys, and others claiming that they conspired to deprive him of assets of his deceased grandmother's trust that were intended for him.  Based on that alleged conspiracy, he asserts a RICO[1] claim and related claims under federal and state law.

Three sets of defendants have filed motions to dismiss the operative first amended complaint ("FAC").  The first two motions, brought by Defendants Kristofer Biorn and Terry Campbell Wallace, respectively, have been granted with leave to amend.  Amendment of the FAC is deferred pending the Court's ruling on the third motion, brought by the Stouky Defendants, who are:  Helene Mula Stouky; Patricia M. Bye; Alexandra Martin; Robert E. Temmerman; Christina Smith; Bye & Bye Services; Howard G. Frank; Aaron, Riechert, Carpol & Riffle, APC; and

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*.

1  Temmerman, Cilley & Kohlmann, LLC.  The Stouky Defendants' motion to dismiss is

2  GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND.

3         At the hearing on the Stouky Defendants' motion, Paul Jr.'s counsel advised the Court that

4  Paul Jr. wishes to supplement his pleading with allegations regarding events that occurred after

5  this lawsuit was filed.  The Court declined to rule on that request orally and directed Paul Jr. to file

6  a written motion for leave to supplement.  The Court indicated that any such motion would have to

7  be resolved before the next round of motions to dismiss, because the Court will not entertain

8  future motions to dismiss in piecemeal fashion.  Paul Jr. thereafter filed a motion to supplement

9  his pleading, the Stouky Defendants filed an opposition, and Paul Jr. filed a reply.  The Court finds

10  the motion to be suitable for decision without oral argument and VACATES the hearing set for

11  October 6, 2022.  Paul Jr.'s motion to supplement his pleading is GRANTED IN PART AND

12  DENIED IN PART.

13         Paul Jr. is GRANTED until September 14, 2022 to file a second amended complaint that

14  complies in all respects with this order.

15  **I.    BACKGROUND**

16         Paul Jr. filed this action on June 11, 2021, and thereafter filed the operative FAC as of

17  right.  *See* Compl., ECF 1; FAC, ECF 53.  He alleges the following facts, which are accepted as

18  true for purposes of evaluating the Stouky Defendants' motion to dismiss.

19         *The Ogier Trust*

20         Paul Jr.'s grandmother, Sara Mula-Ogier ("Sarah"), accumulated millions of dollars in

21  assets during her lifetime, including real estate, stocks, bonds, cash, and personal property.  FAC ¶

22  10.  Sarah had three children:  Alan Mula ("Alan"), Helene Mula-Stouky ("Helene"), and Paul

23  Mula, Sr. ("Paul Sr.").  *Id*. ¶ 11.  Neither Alan nor Helene had children, but Paul Sr. fathered Paul

24  Jr. and, much later, a daughter who is not a party to this action.  *Id*.  On August 17, 2000, Sarah

25  formed the Ogier Trust, naming Paul, Jr. as the beneficiary of the bulk of its assets.  *Id*. ¶ 14.

26  Sarah named her daughter, Helene, as her successor Trustee.  *Id*. ¶ 15.  A sub-trust of the Ogier

27  Trust was to be established to support Helene for her lifetime, and upon Helene's death the assets

28  of the sub-trust were to be distributed to Paul Jr. when he turned 50 years old.  *Id*.

United States District Court
Northern District of California

2

*Transfer of Assets out of the Ogier Trust*

In 2005, weeks before she died, Sarah signed quitclaim deeds to four real properties previously held in the Ogier Trust. *Id*. ¶¶ 17-20. The beneficiaries of those quitclaim deeds were Alan, Helene, and Paul Sr. *Id*. In 2006, Helene retained an attorney, Terry Campbell Wallace ("Wallace"),[2] to petition the Probate Court for an order ratifying the 2005 transfers. *Id*. ¶ 24. Paul Jr. did not receive notice of the 2006 petition. *Id*. ¶ 24. The Probate Court granted the petition and allowed transfer of the four real properties to Alan, Helene, and Paul Sr. *Id*.

Helene allowed her brothers, Alan and Paul Sr., to convert assets of the Ogier Trust. *Id*. ¶ 29. Helene also comingled assets of the Ogier Trust with her own Stouky Trust, such that Ogier Trust assets were placed in the Stouky Trust. *Id*. ¶ 40.

*Stouky Trust*

In 2012, Helene was conserved. FAC ¶ 31. The Probate Court appointed Robert Temmerman ("Temmerman") as Helene's attorney, and Paul Jr.'s half-sister, Christina Smith ("Smith"), as the Conservator of Helene's person. *Id*. ¶ 31. The Probate Court appointed Patricia Bye ("Bye") as the Conservator of Helene's estate and as the successor Trustee of the Stouky Trust. *Id*. ¶ 32.

Paul Jr. was the principal beneficiary of the Stouky Trust. FAC ¶ 27. However, after Helene was conserved, Temmerman and Bye obtained amendments to the Stouky Trust that reduced Paul Jr.'s interest as a beneficiary of the Stouky Trust, and dissipated the assets of the Stouky Trust, many of which were former assets of the Ogier Trust. *Id*. ¶¶ 35-53. Trust assets valued at approximately $3,600,000 intended for Paul Jr. have been bequeathed and gifted to Smith. *Id*. ¶¶ 43-44.

*Biorn's 2012 Legal Services to Paul Jr.*

In 2012, Paul Jr. sought legal advice. FAC ¶ 102. Temmerman referred Paul Jr. to Biorn,

---

[2] The Court refers to Defendant Terry Campbell Wallace as "Wallace" in deference to her expressed preference, although the FAC refers to her as "Campbell." For similar reasons, the Court refers to Defendant Christina Smith as "Smith," although the FAC refers to her as "Weiss."

and Paul Jr. retained Biorn for advice regarding the 2005 quitclaim deeds signed by Sarah. *Id*. ¶¶ 8.10, 102-103. Biorn advised that the statute of limitations had elapsed with respect to any claims arising from the 2005 transfers. *Id*. ¶ 103. Biorn did not inform Paul Jr. that the 2005 transfers were ineffective, and did not inform him about the 2006 probate proceedings. *Id*.

*The Present Lawsuit*

Paul Jr. filed this suit on June 11, 2021, suing the following individuals for RICO violations and related claims: Alan; Helene; Temmerman; Temmerman's law firm, Temmerman, Cilley & Kohlmann, LLP; Bye; Bye's employer, Bye & Bye Services; Bye's attorney, Alexandra Martin ("Martin"); Martin's law firm, Aaron, Riechert, Carpol & Riffle, APC; Bye's former attorney, Howard G. Frank ("Frank"); Smith; Wallace; Biorn; and Biorn's law firm, Crist, Schulz, Biorn & Shepherd APC.

The FAC asserts the following claims, brought by Paul Jr. individually and on behalf of the Ogier Trust and the Stouky Trust: (1) a RICO claim against all defendants; (2) breach of fiduciary duties against Bye as the Conservator of Helene's estate; (3) breach of fiduciary duties against Bye as Trustee of the Stouky Trust; (4) breach of fiduciary duties against Helene and Bye as Trustees of the Ogier Trust; (5) aiding and abetting breach of fiduciary duties against all defendants; (6) conspiracy to breach fiduciary duties against all defendants; (7) unjust enrichment against Smith; (8) intentional interference with expectancy of inheritance against Temmerman and Bye; (9) unfair competition against Temmerman and Bye; (10) violation of the Fair Debt Collection Practices Act ("FDCPA") against Bye and Martin; (11) legal malpractice against Biorn; and (12) conversion against Alan, Helene, Bye, and Smith.

## II.   STOUKY DEFENDANTS' MOTION TO DISMISS

### A.   Legal Standard

#### 1.   Rule 12(b)(1)

A party may challenge the Court's subject matter jurisdiction in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their

United States District Court
Northern District of California

1   face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes

2   the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

3           **2.      Rule 12(b)(6)**

4           "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

5   claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force*

6   *v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted).  While

7   a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter,

8   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

9   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

10          **B.      Discussion**

11          Eleven of the FAC's twelve claims are asserted against one or more of the Stouky

12   Defendants:  Claim 1 for violations of RICO against all defendants; Claim 2 for breach of

13   fiduciary duties against Bye as Conservator of Helene's estate; Claim 3 for breach of fiduciary

14   duties against Bye as Trustee of the Stouky Trust; Claim 4 for breach of fiduciary duties against

15   Helene and Bye as Trustees of the Ogier Trust; Claim 5 for aiding and abetting breach of fiduciary

16   duties against all defendants; Claim 6 for conspiracy to breach fiduciary duties against all

17   defendants; Claim 7 for unjust enrichment against Smith; Claim 8 for intentional interference with

18   expectancy of inheritance against Temmerman and Bye; Claim 9 for unfair competition against

19   Temmerman and Bye; Claim 10 for violation of the FDCPA against Bye and Martin; and Claim

20   12 for conversion against Alan, Helene, Bye, and Smith.

21          The Stouky Defendants seek dismissal of these claims for lack of subject matter

22   jurisdiction under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6).  The Court

23   first addresses the arguments based on lack of subject matter jurisdiction, because "jurisdiction

24   generally must precede merits in dispositional order." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

25   574, 577 (1999).  Unfortunately, the briefing on the motion does not address jurisdictional defects

26   separately from pleading defects, but rather intermingles Rule 12(b)(1) arguments with Rule

27   12(b)(6) arguments.  The Court understands the Stouky Defendants to assert the following facial

28   challenges to subject matter jurisdiction:  (1) this Court lacks subject matter jurisdiction over Paul

United States District Court
Northern District of California

5

1   Jr.'s claims pursuant to the *Rooker-Feldman* doctrine; (2) this Court lacks supplemental

2   jurisdiction over Paul Jr.'s state law claims because Paul Jr. has failed to state a viable federal

3   claim; and (3) even if the Court determines that Paul Jr. has stated a viable federal claim, the Court

4   should decline to exercise supplemental jurisdiction over his state law claims.

5          The Court notes that both sides have submitted evidence in connection with the motion to

6   dismiss.  Paul Jr. submits his own declaration, with several attached exhibits.  *See* Pl.'s Decl., ECF

7   109.  The Stouky Defendants submit the declaration of their counsel, Bonnie Margaret Ross,

8   attaching an unredacted version of one of the documents submitted by Paul Jr.  *See* Ross. Decl.,

9   ECF 114-1, 15-1.  Paul Jr. Objects to the evidence submitted by the Stouky Defendants.  *See* Pl.'s

10  Obj. to Reply Evid., ECF 121-1.  None of this evidence is appropriate material for judicial notice

11  or incorporation by reference.  Accordingly, the Court has not considered it in connection with

12  Stouky Defendants' facial challenge to subject matter jurisdiction under Rule 12(b)(1) or their

13  contention that the FAC fails to allege facts sufficient to state a claim for relief under Rule

14  12(b)(6).

15         The Court first addresses the Stouky Defendants' jurisdictional arguments, and then it

16  turns to their arguments that the FAC fails to state a claim for relief against them.

17              **1.      Dismissal on Jurisdictional Grounds is not Warranted at this Time**

18                   **a.      *Rooker-Feldman***

19         "The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases:  *Rooker v.*

20  *Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *D.C. Court of*

21  *Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)."  *Benavidez v. Cnty. of*

22  *San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021).  The doctrine "bars lower federal courts from

23  exercising jurisdiction to review the final determinations of a state court in judicial proceedings."

24  *Id*. (internal quotation marks and citation omitted).  "Plaintiffs thus cannot come to federal court to

25  seek what in substance would be appellate review of the state judgment." *Id*. (internal quotation

26  marks and citation omitted).

27         The Ninth Circuit has "provided the following general formulation of the *Rooker-Feldman*

28  doctrine:  If a . . . plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court

United States District Court
Northern District of California

. . . , *Rooker-Feldman* bars subject matter jurisdiction in federal district court.  If . . . [a] plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."  *Benavidez*, 993 F.3d at 1142 (internal quotation marks and citation omitted).  "[W]here a party alleges extrinsic fraud by an adverse party in procuring a state court judgment, the *Rooker-Feldman* doctrine does not apply, because such a claim does not challenge the state court decision directly."  *Id*. at 1143.

The Stouky Defendants argue that Paul Jr.'s "retaliatory attempts to use this Court to review and undermine the state court orders are barred by the *Rooker-Feldman* doctrine."  Mot. at 3, ECF 66.  As the Court reads the FAC, however, Paul Jr.'s theory is that all Defendants conspired to defraud him of trust assets to which he was entitled, and his claims are grounded at least in part in Defendants' alleged extrinsic fraud in obtaining rulings from the Probate Court to further that conspiracy.  Paul Jr. alleges that Wallace certified that she mailed him a copy of the 2006 petition to the Probate Court, through which Defendants obtained judicial ratification of the 2005 transfer of real properties out of the Ogier Trust, but he never received notice of the 2006 petition.  FAC ¶ 24.  Had he received notice, Paul Jr. alleges that he would have contested the transfers.  *Id*. ¶ 25.  Wallace is not one of the Stouky Defendants, but she is alleged to have conspired with the Stouky Defendants against Paul Jr., and the FAC gives rise to a reasonable inference that Wallace's conduct was in furtherance of the alleged conspiracy.

Paul Jr. does not ask this Court to invalidate any order issued by the Probate Court, or to recover particular trust assets distributed by the Probate Court.  FAC Prayer.  He seeks damages flowing from Defendants' alleged unlawful and fraudulent conspiracy, including the value of trust assets that should have been distributed to him.  *Id*.  Paul Jr. also seeks statutory damages under RICO.  *Id*.  The Court finds that as currently framed, the FAC is not clearly barred by the *Rooker-Feldman* doctrine

The motion to dismiss the FAC for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine is DENIED.

### b.   Supplemental Jurisdiction

The FAC alleges that the Court has federal question jurisdiction over the RICO claim and

7

1  supplemental jurisdiction over the state law claims.  FAC ¶ 5.  While not specifically addressed in

2  the section of the FAC addressing jurisdiction, the Court also has federal question jurisdiction over

3  the FDCPA claim.  The Stouky Defendants argue that there is no basis for the Court's assertion of

4  supplemental jurisdiction over the state law claims, because Paul Jr. has failed to allege a viable

5  federal claim under RICO or the FDCPA.  They also argue that even if the federal claims are

6  adequately alleged, the Court should decline supplemental jurisdiction over the state law claims.

7        A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367.

8  Section 1367(a) provides that "in any civil action of which the district courts have original

9  jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

10  related to claims in the action within such original jurisdiction that they form part of the same case

11  or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A court

12  may decline to exercise supplemental jurisdiction over a state law claim where:  "(1) the claim

13  raises a novel or complex issue of State law, (2) the claim substantially predominates over the

14  claim or claims over which the district court has original jurisdiction, (3) the district court has

15  dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances,

16  there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

17        The Court has original jurisdiction over the RICO and FDCPA claims, because they are

18  brought under federal statute.  While the Court agrees with the Stouky Defendants that Paul Jr. has

19  not stated a claim under either statute, that failure does not deprive the Court of subject matter

20  jurisdiction.  A federal court lacks subject matter jurisdiction over a federal claim "only if: (1) the

21  alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made

22  solely for the purpose of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and

23  frivolous." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012)

24  (internal quotation marks and citation omitted).  It is not clear that the RICO and FDCPA claims

25  are brought solely for the purpose of obtaining jurisdiction, or that they are wholly insubstantial or

26  frivolous.

27        The Court has supplemental jurisdiction over the state law claims, because they are so

28  related to the RICO claim that they form part of the same case or controversy for Article III

United States District Court
Northern District of California

8

purposes.  If the RICO claim ultimately is dismissed, the Court likely will decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3).  If the RICO claim survives motion practice, the Court will determine whether to exercise supplemental jurisdiction over the state law claims based on the factors set forth in 28 U.S.C. § 1367(c).  It would be premature to make such a determination at this time, however.  As discussed below and in the Court's prior orders, all claims of the FAC are subject to dismissal under Rule 12(b)(6), with leave to amend.  The Court cannot apply the § 1367(c) factors to a pleading that has not yet been filed.  The Court therefore will deny the motion to dismiss the state law claims on jurisdictional grounds, without prejudice to renewal in a later motion, if appropriate.

The motion to dismiss the state law claims on jurisdictional grounds is DENIED.

## 2.    All Claims are Subject to Dismissal for Failure to State a Claim

In addition to challenging the FAC on jurisdictional grounds, the Stouky Defendants contend that the claims against them are subject to dismissal for pleading deficiencies under Rule 12(b)(6).  The Stouky Defendants assert several arguments that apply broadly to multiple claims, contending that:  Paul Jr. lacks standing to sue on behalf of the trusts; all claims are barred by the *Noerr-Pennington* doctrine; all state law claims are barred by California's litigation privilege; and all state law claims are barred by the Probate Court's exclusive jurisdiction.  The Stouky Defendants also assert that each claim is inadequately pled.  Paul Jr. contends that the Stouky Defendants' arguments lack merit and that his claims are adequately pled.

The Court first address the Stouky Defendants' broader arguments going to multiple claims, and then it addresses the specific arguments directed to the individual claims.

### a.    Arguments Going to Multiple Claims

#### i.    Paul Jr.'s Standing to Sue on Behalf of the Trusts

Paul Jr. sues individually and on behalf of the Ogier Trust and the Stouky Trust.  The Stouky Defendants argue that he lacks standing to sue on behalf of the trusts.  "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." *Est. of Bowles*, 169 Cal. App. 4th 684, 691 (2008).  "Conversely, a trust beneficiary cannot sue in the name of the trust." *Id.*  However, "a trust beneficiary can bring a proceeding against a trustee for

1    breach of trust."  *Id.*  Moreover, "a trust beneficiary can pursue a cause of action against a third

2    party who actively participates in or knowingly benefits from a trustee's breach of trust."  *Id*.

3    Consequently, Paul Jr. lacks standing to sue on behalf of the trusts, although he has standing to

4    assert certain individual claims on his own behalf as a trust beneficiary.  The adequacy of his

5    individual claims against the trustees is discussed below.

6           The motion to dismiss claims brought by Paul Jr. on behalf of the Ogier Trust and the

7    Stouky Trust is GRANTED.

8                    **ii.**     ***Noerr-Pennington* Doctrine**

9           The Stouky Defendants contend that Paul Jr.'s claims are barred by the *Noerr-Pennington*

10   doctrine.[3]  "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the

11   right of the people . . . to petition the Government for a redress of grievances.'"  *Sosa v.*

12   *DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I).  "The

13   constitutional right to petition includes the right of access to the courts and therefore most

14   litigation activities (including pre-suit demands) are immunized from statutory liability."  *United*

15   *States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021).  However, "the *Noerr-Pennington* doctrine

16   does not protect sham litigation activities."  *Id.*  "[L]itigation can be deemed a sham if a party's

17   knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its

18   legitimacy."  *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998) (internal

19   quotation marks and citation omitted).

20          The Stouky Defendants argue that because Paul Jr.'s claims are grounded in their litigation

21   conduct in the Probate Court, those claims are barred by the *Noerr-Pennington* doctrine.  Paul Jr.

22   argues that his allegations regarding the Stouky Defendants' fraudulent conduct, directed to the

23   Probate Court and to him, bring his claims within the sham exception to the *Noerr-Pennington*

24   doctrine.  The Court agrees that Paul Jr.'s allegations of fraud, if true, would bring this case within

25   the sham exception.  Whether the sham exception to the *Noerr-Pennington* doctrine applies in a

26   particular case is a question of fact.  *See Koziol*, 993 F.3d at 1172.  The Court cannot resolve that

27

28   [3] The doctrine derives from two Supreme Court cases, *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

United States District Court
Northern District of California

1    question on a motion to dismiss.

2        The motion to dismiss based on the *Noerr-Pennington* doctrine is DENIED.

3                    **iii.    California's Litigation Privilege**

4        The Stouky Defendants' contention that Paul Jr.'s state law claims are barred by

5    California's litigation privilege fails for similar reasons.  The litigation privilege, codified at

6    California Civil Code § 47(b), provides absolute immunity from tort liability based on

7    communications in or related to judicial proceedings.  *See Kimes v. Stone*, 84 F.3d 1121, 1126 (9th

8    Cir. 1996).  The privilege does not apply, however, to "extrinsic fraud."  *See id*. at 1127 n.3.

9    "Examples of extrinsic fraud include: Keeping the unsuccessful party away from the court by a

10   false promise of a compromise, or purposely keeping him in ignorance of the suit."  *Id*. (internal

11   quotation marks and citation omitted).  As discussed above, Paul Jr. alleges that all defendants

12   conspired to keep him in ignorance of their conduct in stripping assets from the trusts.  Among

13   other things, Paul Jr. claims that he never received notice of the 2006 petition to the Probate Court,

14   through which Defendants obtained judicial ratification of the 2005 transfer of real properties out

15   of the Ogier Trust.  FAC ¶ 24.  Evidence that Defendants deliberately kept Paul Jr. in ignorance of

16   Probate Court proceedings, so as to prevent his participation in those proceedings, would preclude

17   application of § 47(b).  Given Paul Jr.'s theory of the case, the Court cannot decide on a motion to

18   dismiss whether California's litigation privilege applies.

19       The motion to dismiss the state law claims based on California's litigation privilege is

20   DENIED.

21                    **iv.    Probate Court's Exclusive Jurisdiction**

22       The Stouky Defendants' motion makes several references to the California Probate Court's

23   exclusive jurisdiction over certain matters, suggesting that this Court lacks subject matter

24   jurisdiction over the state law claims in the FAC.  In their reply, the Stouky Defendants clarify that

25   they do not challenge this Court's subject matter jurisdiction.  Instead, their argument is that "the

26   Probate Court has already acted on many of the issues raised by Plaintiff in his retaliatory

27   Complaint filed in this Court, granting various petitions and motions concerning the Ogier and

28   Stouky Trusts and Helene's Conservatorship estate, thereby establishing its concurrent jurisdiction

United States District Court
Northern District of California

11

1    with this court."  Reply at 9, ECF 114.  The Stouky Defendants argue that under those

2    circumstances, this Court should decline supplemental jurisdiction over Paul Jr.'s state law claims.

3    *See id.*  As discussed above, this Court finds that it would be premature for it to decide whether to

4    exercise supplemental jurisdiction at this time.

5         The motion to dismiss the state law claims based on the Probate Court's exclusive

6    jurisdiction is DENIED.

7              **b.      Pleading Deficiencies of Individual Claims**

8                   **i.      Claim 1 – RICO**

9         Claim 1 asserts claims for substantive RICO violations against Helene, Temmerman, Bye,

10   and Smith, and claims for RICO conspiracy against all defendants.  The RICO Act makes it

11   "unlawful for any person employed by or associated with any enterprise engaged in, or the

12   activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

13   indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or

14   collection of unlawful debt."  18 U.S.C. § 1962(c).  "The terms of the Civil RICO statute permit

15   [a]ny person injured in his business or property by reason of a violation of § 1962 to recover treble

16   damages."  *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020).

17        "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3)

18   through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to

19   plaintiff's business or property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d

20   353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted).  "To show the existence

21   of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a

22   common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the

23   purpose."  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir.

24   2014).

25        To allege claim for RICO conspiracy under § 1962(d), "Plaintiffs must allege either an

26   agreement that is a substantive violation of RICO or that the defendants agreed to commit, or

27   participated in, a violation of two predicate offenses."  *Howard v. Am. Online Inc.*, 208 F.3d 741,

28   751 (9th Cir. 2000).  "[T]he failure to adequately plead a substantive violation of RICO precludes

United States District Court
Northern District of California

12

1    a claim for conspiracy." *Id.*

2        Paul Jr. alleges that "Defendants engaged in a pattern of wrongful conduct involving

3    extortion, mail fraud, wire fraud, money laundering, monetary transactions with unlawful

4    proceeds, interstate racketeering, and interstate transport of misappropriated funds (the 'Predicate

5    Acts') to allow them to acquire or maintain an interest in, or control of, the Ogier Trust."  FAC ¶

6    73.  He also alleges that "Defendants combined together to engage in a pattern of wrongful

7    conduct involving the Predicate Acts to conduct or participate, directly or indirectly, in the

8    conduct of the conspiracy to allow them to conduct or participate in the operation of the Stouky

9    Trust, acquire an interest in or control of the Ogier Trust, and thus allow them to plunder, pillage

10   and loot the assets of both the Ogier Trust and the Stouky Trust. . . ." *Id.*

11       Although Paul Jr. identifies a number of criminal offenses that could constitute predicate

12   acts if adequately pled, those offenses are alleged in only the most general of terms.  For example,

13   Paul Jr. identifies mail fraud and wire fraud as two predicate acts committed by Defendants.  FAC

14   ¶ 74.  "The mail and wire fraud statutes are identical except for the particular method used to

15   disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B)

16   the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud."

17   *Eclectic Properties*, 751 F.3d at 997.  With respect to the alleged mail fraud, Paul Jr. alleges that

18   "the Defendants, or someone associated with the scheme, used the mails or caused the mails to be

19   used, by placing or causing to be placed in an authorized depository for mail a letter intended to be

20   sent or delivered by the United States Postal Service."  FAC ¶ 74.1(b).  With respect to the alleged

21   wire fraud, Paul Jr. alleges that "the Defendants, or someone associated with the scheme or

22   artifice, transmitted communications by means of a telephone, computer or fax machine connected

23   to interstate wires for the purpose of executing such scheme or artifice."  FAC ¶ 74.2(b).  These

24   allegations are so vague that it is impossible to discern what information was transmitted through

25   the mail or wires or how those transmissions furthered the alleged scheme.  The allegations do not

26   come close to satisfying the pleading requirements of Federal Rule of Civil Procedure 9(b), which

27   is applicable to the RICO claim.  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.

28   2004) (affirming dismissal of RICO claim that did not satisfy Rule 9(b)).

United States District Court
Northern District of California

13

1   The Court also observes that it is unclear from the FAC whether Paul Jr. intends to allege a

2   single RICO conspiracy spanning the entire period from 2005 through 2021, or whether he intends

3   to allege two separate RICO conspiracies.  Paul Jr. should clarify that aspect of his pleading when

4   he amends.

5   The motion to dismiss is GRANTED as to Claim 1.

6   ## ii.    Claims 2, 3, 4 – Breach of Fiduciary Duties

7   Claims 2, 3, and 4 allege that Defendant Bye and breached various fiduciary duties.  Claim

8   2 asserts that Bye, acting as the Conservator of Helene's estate, breached fiduciary duties owed to

9   Helene.  Claim 3 asserts that Bye, acting as the Trustee of the Stouky Trust, breached fiduciary

10  duties owed to the beneficiaries of the Stouky Trust.  Claim 4 asserts that Bye and Helene, acting

11  as Trustees of the Ogier Trust, breached fiduciary duties owed to owed to Paul, Jr., as remainder

12  beneficiary of the Ogier Trust.  The Stouky Defendants contend that Paul Jr. has failed to state a

13  claim under any of these theories.

14  With respect to Claim 2, brought against Bye in her role as Conservator of Helene's estate,

15  the Stouky Defendants assert that Bye is entitled to immunity for actions taken while acting in a

16  quasi-judicial capacity as a court-appointed conservator.  That argument is without merit.  The

17  case upon which the Stouky Defendants rely, *Mosher v. Saalfeld*, 589 F.2d 438 (9th Cir. 1978),

18  construed Oregon law.  As Paul Jr. points out in his opposition, the California Probate Code

19  expressly provides that the conservator of the estate may be held liable for breach of fiduciary

20  duties that result in loss or depreciation in value of the estate.  *See* Cal. Prob. Code § 2401.3.  In

21  reply, the Stouky Defendants argue that even if Bye could be held liable for breach of fiduciary

22  duties running to Helene, a third party such as Paul Jr. would not have standing to bring a claim

23  for such breach of fiduciary duties.  Paul Jr. has not cited, and the Court has not discovered, any

24  authority suggesting that a third party such as Paul Jr. would have standing to bring a freestanding

25  claim for breach of Bye's fiduciary duties running to Helene.  Accordingly, Claim 2 is subject to

26  dismissal.

27  It likewise does not appear that Paul Jr. has standing to bring Claim 3 for breach of

28  fiduciary duties against Bye in her role as the Trustee of the Stouky Trust.  It appears on the face

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    of the FAC that the Stouky Trust is a revocable trust, as Helene is alive.  "A revocable trust is a

2    trust that the person who creates it, generally called the settlor, can revoke during the person's

3    lifetime." *Est. of Giraldin*, 55 Cal. 4th 1058, 1062 (2012).  "The beneficiaries' interest in the trust

4    is contingent only, and the settlor can eliminate that interest at any time." *Id*.  "When the trustee

5    of a revocable trust is someone other than the settlor, that trustee owes a fiduciary duty to the

6    settlor, *not to the beneficiaries*, as long as the settlor is alive." *Id*. (emphasis added).  If the settlor

7    becomes a conservatee, the trustee's duties are owed to the conservator.  *See Johnson v. Kotyck*,

8    76 Cal. App. 4th 83, 88 (1999).  Thus, while the settlor is alive, even if conserved, the trustee of a

9    revocable trust does not owe any fiduciary duties to the trust beneficiaries.

10           Paul Jr. relies on two California Supreme Court cases, *Est. of Giraldin* and *Barefoot v.

11   Jennings,* in arguing that the trustee of a revocable trust does owe fiduciary duties to the trust

12   beneficiaries.  That reliance is misplaced.  In *Est. of Giraldin*, the California Supreme Court

13   confirmed that beneficiaries of a revocable trust do not have standing to sue the trustee while the

14   settlor is alive.  *See Est. of Giraldin*, 55 Cal. 4th at 1062.  However, the court noted that "[w]hen

15   the settlor dies, the trust becomes irrevocable, and the beneficiaries' interest in the trust vests." *Id*.

16   The Court went on to state that, "Because a trustee's breach of the fiduciary duty owed to the

17   settlor can substantially harm the beneficiaries by reducing the trust's value against the settlor's

18   wishes, we conclude the beneficiaries do have standing to sue for a breach of that duty *after the

19   settlor has died*." *Id*. (emphasis added).  In *Barefoot v. Jennings*, the California Supreme Court

20   held that after a settlor's death, "the Probate Code grants standing in probate court to individuals

21   who claim that trust amendments eliminating their beneficiary status arose from incompetence,

22   undue influence, or fraud." *Barefoot v. Jennings*, 8 Cal. 5th 822, 825 (2020).  Neither case

23   supports Paul Jr.'s assertion that Bye, in her role as the Trustee of the Stouky Trust, owes him

24   fiduciary duties, or that he has standing to sue Bye for breach of her fiduciary duties running to

25   Helene while Helene still lives.  While Paul Jr. may acquire standing to assert claims against Bye

26   if Helene passes away, he does not have it now.

27           Claim 4, brought against Bye and Helene as the Trustees of the Ogier Trust, are factually

28   distinguishable from the authorities discussed above because the settlor of the Ogier Trust – Sarah

– is deceased.  However, to the extent Paul Jr. may have standing to sue Bye and Helene for breach of their fiduciary duties, he does not allege what conduct on the part of each defendant gives rise to his claim.  As noted above, Helene was conserved in 2012 and thus could not have breached any fiduciary duties to Paul Jr. after that time.  When Bye took over as a successor trustee, Helene was an income beneficiary of the Ogier Trust.  Claim 4 does not specify what assets Bye should have preserved from the Ogier Trust but did not, or what other actions Bye should have taken.  Claim 4 is subject to dismissal on these grounds.

The Court notes that the Stouky Defendants contend that any claim for breach of fiduciary duties against Bye or Helene would have to be brought in the Probate Court, rather than this Court. The Court declines to address that contention at this time, given the lack of clarity regarding the bases for Paul Jr.'s claims for breach of fiduciary duties.  If he chooses to reassert those claims, and clarifies the bases for them, the Stouky Defendants may reassert their argument regarding the proper forum for such claims.

The motion to dismiss is GRANTED as to Claims 2, 3, and 4.

### iii.  Claim 5 – Aiding and Abetting Breach of Fiduciary Duties

Claim 5 asserts that all Defendants aided and abetted Bye in the breach of her fiduciary duties in her roles as Conservator of Helene's estate, Trustee of the Stouky Trust, and Trustee of the Ogier Trust.  "The elements of a claim for aiding and abetting a breach of fiduciary duty in California are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Gregory v. Harris*, No. 21-CV-03311-VKD, 2022 WL 62539, at *5 (N.D. Cal. Jan. 6, 2022) (internal quotation marks and citation omitted).  As discussed above, Bye's roles as Conservator of Helene's estate and Trustee of the Stouky Trust do not give rise to fiduciary duties running to Paul Jr.  While Bye's role as Trustee of the Ogier Trust potentially could give rise to fiduciary duties to Paul Jr., he has not alleged facts showing that Bye breached fiduciary duties to him.  Paul Jr. thus has not alleged the first element of a claim for aiding and

United States District Court
Northern District of California

abetting breach of fiduciary duties.

The motion to dismiss is GRANTED as to Claim 5.

### iv.    Claim 6 – Conspiracy to Breach Fiduciary Duties

Claim 6 alleges that "[a]ll of the Defendants knowingly participated in a common scheme to assist Bye in her breach of the fiduciary duties she owed to Paul, Jr., as set forth above, with a view to the furtherance of a common purpose or design." FAC ¶ 91. Under California law, "[t]he elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (2011). To be liable, a defendant must "have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995). The FAC does not allege facts showing that Bye breached fiduciary duties owed to Paul Jr. and thus does not allege resulting damages.

The motion to dismiss is GRANTED as to Claim 6.

### v.    Claim 7 – Unjust Enrichment

Claim 7 asserts a claim of unjust enrichment against Smith based on the alleged diversion of trust assets from Paul Jr. to Smith. FAC ¶¶ 93-94. Under California law, "[t]he elements of an unjust enrichment claim are the receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (internal quotation marks and citation omitted). It is unclear from the FAC whether Smith actually has received trust assets to which Paul Jr. claims entitlement, or whether Paul Jr.'s theory is that Smith has been designated as the beneficiary of assets to which he claims entitlement. It seems that mere designation as a beneficiary of a revocable trust would be insufficient to state a claim for conversion, as the beneficiary's rights in trust assets are not vested. Upon amendment, Paul Jr. should clarify his theory of unjust enrichment.

The motion to dismiss is GRANTED as to Claim 7.

### vi.    Claim 8 - Intentional Interference with the Expectancy of an Inheritance

Claim 8 asserts a claim for Intentional Interference with Expectation of Inheritance ("IIEI") against Temmerman and Bye.  The elements of a claim for IIEI are:  (1) "the plaintiff must plead he had an expectancy of an inheritance"; (2) "causation," meaning "a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator . . . if there had been no such interference"; (3) "intent, i.e., that the defendant had knowledge of the plaintiff's expectancy of inheritance and took deliberate action to interfere with it"; (4) "the interference was conducted by independently tortious means, i.e., the underlying conduct must be wrong for some reason other than the fact of the interference"; and (5) "resulting damages." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1057 (2012).  The tort is not available when the plaintiff has an adequate remedy in the Probate Court.  *See id.* at 1059.

Paul Jr. alleges that "Temmerman and Bye systematically diverted assets from the Ogier Trust and the Stouky Trust which were intended to go to Paul, Jr."  FAC ¶ 95.  According to Paul Jr., he had an expectancy of inheritance from the Ogier Trust and the Stouky Trust, and Defendants Temmerman and Bye intended to and did interfere with that expectancy.  *Id.* ¶¶ 96-98.  These allegations are insufficient to state a claim for IIEI.  Paul Jr. has not alleged facts showing that the conduct of Temmerman and Bye was independently tortious, as he has not stated a viable claim against either of these defendants.  Nor has Paul Jr. alleged that he does not have an adequate remedy in the Probate Court.

The motion to dismiss is GRANTED as to Claim 8.

### vii.    Claim 9 – Unfair Competition

Claim 9 asserts that Defendants Temmerman and Bye engaged in unfair competition in violation of California Business & Professions Code § 17203.  Section 17203 provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  Cal. Bus. & Prof. Code § 17203.  The Stouky Defendants point out that § 17203 provides a remedy for unfair competition but does not give rise to a substantive claim.  Based on Paul Jr.'s opposition, it appears that he may have intended to assert a

18

1    claim under § 17200 instead of § 17203.  Section 17200 prohibits an individual or entity from

2    engaging in an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §

3    17200. "Because the statute is written in the disjunctive, it is violated where a defendant's act or

4    practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152,

5    1168 (9th Cir. 2012).  Claim 9, which comprises two short paragraphs, does not specify whether

6    Paul Jr. sues under the unlawful, unfair, or fraudulent prong.  Due to the FAC's lack of clarity as

7    to which statutory provision Paul Jr. intended to sue under, and the failure to specify a particular

8    prong of § 17200, this claim is subject to dismissal.

9        The motion to dismiss is GRANTED as to Claim 9.

10                            **viii.    Claim 10 – FDCPA**

11        Claim 10 asserts that Bye and Martin violated the FDCPA "by making false

12    representations concerning the character, amount, or legal status of Paul, Jr.'s alleged debt."  FAC

13    ¶ 101.  "To establish a claim under the FDCPA, a plaintiff must prove the following elements:

14    (1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the

15    defendant qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in a

16    prohibited act or has failed to perform a requirement imposed by the FDCPA." *Ellis v. Phillips &*

17    *Cohen Assocs., Ltd.*, No. 5:14-CV-05539-EJD, 2016 WL 3566981, at *3 (N.D. Cal. June 30,

18    2016) (internal quotation marks and citation omitted).  Claim 10 does not describe the alleged

19    collection activity giving rise to the claim, does not allege that Bye and Martin qualify as debt

20    collectors under the FDCPA, and does not identify the alleged prohibited act or failure.

21        The motion to dismiss Claim 10 is GRANTED.

22                            **ix.    Claim 12 – Conversion**

23        Claim 12 asserts a claim of conversion against Alan, Paul Sr., Helene, Bye, and Smith.  At

24    the hearing, the Court asked Paul Jr.'s counsel for clarification regarding the FAC's allegations

25    against Paul Sr., as he is deceased.  Counsel advised that any claims stated against Paul Sr. were in

26    error and would be removed upon amendment.

27        "Conversion is the wrongful exercise of dominion over the property of another." *Farmers*

28    *Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997).  "The elements of a conversion are the

United States District Court
Northern District of California

19

1    plaintiff's ownership or right to possession of the property at the time of the conversion; the

2    defendant's conversion by a wrongful act or disposition of property rights; and damages." *Id.*

3    This claim alleges that "[a]s a vested beneficiary of the Ogier Trust, Paul, Jr. had a sufficient

4    ownership interest in the Ogier Trust assets following Sarah's death to support a cause of action

5    for conversion of those assets." FAC ¶ 106. Paul Jr. does not allege that he ever had ownership or

6    right to possession of any trust assets at any time to date. Accordingly, he has not made out a

7    claim for conversion. Paul Jr. concedes this point, but argues that it is irrelevant, because he is

8    suing on behalf of the Ogier Trust and it had possession of the property that was converted. As

9    discussed above, however, Paul Jr. does not have standing to sue on behalf of the Ogier Trust.

10       The motion to dismiss is GRANTED as to Claim 12.

11                         **3.    Leave to Amend is Appropriate**

12       Having determined that the claims against the Stouky Defendants are subject to dismissal,

13   the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted

14   unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory

15   motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the

16   opposing party, and (5) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see

17   also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing

18   *Foman* factors).

19       The Court finds no undue delay (factor 1) or bad faith (factor 2). While Paul Jr. did amend

20   once as of right, he has not had an opportunity to amend after receiving guidance from the Court,

21   and therefore cannot be said to have repeatedly failed to cure his pleading's deficiencies (factor 3).

22   At this early stage in the proceedings, the Court finds that granting further opportunity to amend

23   would not impose undue prejudice on the Stouky Defendants (factor 4). Finally, it is not clear that

24   amendment would be futile (factor 5). Having weighed these factors, the Court determines that

25   leave to amend is appropriate. Paul Jr. is advised that because all of his claims sound in fraud, the

26   amended complaint must comply with the pleading standard in Federal Rule of Civil Procedure

27   9(b).

28       Accordingly, the claims of the FAC are DISMISSED WITH LEAVE TO AMEND.

United States District Court
Northern District of California

**III.    PAUL JR.'S MOTION TO SUPPLEMENT HIS PLEADING**

    **A.    Legal Standard**

    Federal Rule of Civil Procedure 15(d), governing supplemental pleadings, provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981).  "The rule is a tool of judicial economy and convenience" and "[i]ts use is therefore favored." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).  "While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction." *Id*. at 474.  The district court may permit the addition of new claims and new defendants in a supplemental complaint. *See id.* at 476.  In general, district courts "liberally construe Rule 15(d) absent a showing of prejudice to the defendant." *Id*. at 475.

    District courts within the Ninth Circuit often evaluate motions to supplement the complaint under the same *Foman* factors used to determine whether to grant leave to amend the complaint. *See, e.g., McKinnon v. Washington Dep't of Corr.*, No. C21-5097-BHS-MLP, 2022 WL 1449681, at *3 (W.D. Wash. May 9, 2022); *Solaria Corp. v. GCL Sys. Integration Tech. Co.*, No. 20-CV-07778-BLF, 2022 WL 279870, at *2 (N.D. Cal. Jan. 31, 2022); *Doe v. Butte Cnty. Prob. Dep't*, No. 2:20-cv-02248-TLN-DMC, 2022 WL 705616, at *2 (E.D. Cal. Mar. 9, 2022).  Those factors are:  (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *See Foman*; *see also Eminence Capital* (discussing *Foman* factors).

    **B.    Discussion**

    Paul Jr. filed this lawsuit on June 11, 2021, alleging among other things that Defendants engaged in a RICO conspiracy to deprive him of assets of his deceased grandmother's trust that were intended for him.  *See* Compl., ECF 1.  As discussed above, Paul Jr. claims that the RICO

21

conspiracy dates back to 2005 and has involved fraud on him and on the Probate Court.  He wishes to supplement his pleading with allegations of conduct in furtherance of the alleged RICO conspiracy that post-dates the filing of this lawsuit.  Specifically, he wishes to add allegations regarding two petitions Bye filed in the Probate Court, one on August 5, 2021 and the other on January 20, 2022.  Bye filed the petitions with the aid of two attorneys – Martin, who is a named defendant in this lawsuit, and Juliette Nguyen ("Nguyen"), who is not.  Paul Jr. seeks to add allegations against all three individuals and to add Nguyen as a defendant to the RICO claim.

The August 5, 2021 petition sought $50,000 in Ogier Trust funds to pay the Stouky Defendants' legal fees in the present case; that request later was increased to $80,000.  Paul Jr. contends that in connection with that petition, Bye made a number of false averments to the Probate Court regarding the events of 2005 and 2006, and submitted a forged handwritten document to the Probate Court that she represented to be in Paul Jr.'s handwriting.  The handwritten document purports to waive all Paul Jr.'s interest in the Ogier Trust, and Paul Jr. asserts that Bye relied on the document in arguing to the Probate Court that it did not need to consider Paul Jr.'s interests in ruling on the petition for funds to pay legal fees, because Paul Jr. is no longer a remainder beneficiary of the Ogier Trust.  The January 20, 2022 petition sought to collect on debts that Paul Jr. says he had already paid.  Paul Jr. characterizes that petition as an extortionate threat to instigate sham litigation that Bye and her attorneys did not intend to pursue.

The Stouky Defendants oppose Paul Jr.'s motion to supplement his pleading on numerous grounds.  First, they argue that the proposed allegations against Bye would not establish a claim or predicate act of perjury.  Second, they assert that allowing the proposed allegations would invite inconsistent outcomes between this Court and the Probate Court, and would waste the resources of Helene, a conservatee.  Third, the Stouky Defendants argue that addition of the proposed allegations would be futile, because the petitions are protected First Amendment activity under the *Noerr-Pennington* doctrine.  Fourth, they contend that the proposed allegations constitute a de facto appeal of the Probate Court's rulings and thus run afoul of the *Rooker-Feldman* doctrine.  Fifth, they assert that Paul Jr. was not injured by the January 20, 2022 petition, because Bye corrected the accounting error that caused Paul Jr. to be double-charged.  Sixth, the Stouky

United States District Court
Northern District of California

Defendants argue that Paul Jr. was not diligent in filing his motion to supplement, and that he could have done so well before now.  Seventh, they contend that the motion to supplement is procedurally defective because Paul Jr. has not submitted a copy of his proposed supplemental pleading and has not supported his motion with adequate evidentiary support.  Finally, the Stouky Defendants express the concern that, because Bye will continue filing petitions in the Probate Court in her roles as Conservator of Helene's estate and as the successor Trustee of the Stouky Trust, Paul Jr. will seek leave to supplement his pleading every time he is unsatisfied with the Probate Court's ruling.

The Court concludes that under the liberal standard governing Rule 15(d), it is appropriate to grant Paul Jr.'s motion to supplement, except for his request to add Nguyen as a defendant.  Applying the *Foman* factors, the Court finds that Paul Jr. has not unduly delayed in seeking leave to supplement his pleading (factor 1).  He first raised the possibility of supplementation during motion practice on his FAC, and the Court made clear that if leave to supplement is granted, Paul Jr. will be given leave to include the new allegations in his second amended complaint.  Only now has he been granted leave to file the second amended complaint.  The record does not suggest any bad faith motive for seeking leave to supplement (factor 2).  Failure to cure deficiencies (factor 3) is not applicable to his motion for leave to supplement, and in any event Paul Jr. has not previously had the benefit of the Court's rulings on his pleading until the current round of motion practice.  Bye and Martin are named as defendants in the FAC and they are well aware that Paul Jr.'s RICO claim against them is based in part on allegedly fraudulent proceedings before the Probate Court.  The addition of allegations regarding the identified post-lawsuit petitions, for the purpose of bolstering the RICO claim, therefore would not impose undue prejudice on Bye and Martin (factor 4).  Finally, although the Stouky Defendants argue that addition of the proposed allegations would be futile for a number of reasons, including the *Rooker-Feldman* and the *Noerr-Pennington* doctrines, the Court finds that the allegations are not clearly futile (factor 5).  Defendants may raise any appropriate challenge to the new allegations in response to Paul Jr.'s second amended complaint.  For these reasons, the Court will allow the addition of allegations against Bye and Martin arising from the identified petitions.

1       The Court will not allow the proposed addition of Nguyen as a defendant, however.  There

2   is no indication on this record that Nguyen was involved in the events that gave rise to Paul Jr.'s

3   RICO claim or that she has entered the alleged RICO conspiracy by representing Bye in the

4   probate proceedings.  Absent some plausible connection between Nguyen and the alleged

5   longstanding RICO conspiracy, the Court finds no basis to allow her addition as a defendant.  It

6   would be unduly prejudicial to require Nguyen to defend this litigation based on nothing more

7   than her recent representation of Bye in the Probate Court proceedings.

8       Most of the Stouky Defendants' arguments are addressed in the above discussion of the

9   *Foman* factors.  The Court addresses their procedural arguments separately, however.  The Stouky

10  Defendants contend that Paul Jr.'s motion is procedurally defective because he has not submitted a

11  proposed supplemental pleading.  In response, Paul Jr. argues that neither Ninth Circuit case law

12  nor this district's Civil Local Rules requires the submission of a proposed supplemental complaint.

13  Paul Jr. technically is correct on the latter point, as the Civil Local Rules require submission of a

14  proposed "amended pleading," which is different from a proposed supplemental pleading.  *See*

15  Civ. L.R. 10-1 ("Any party filing or moving to file an amended pleading must reproduce the entire

16  proposed pleading and may not incorporate any part of a prior pleading by reference."); *Scheller v.*

17  *Nutanix, Inc.*, No. 19-CV-01651-WHO, 2021 WL 3616771, at *2 (N.D. Cal. Aug. 16, 2021)

18  (distinguishing between motions for leave to amend and motions for leave to supplement).  He

19  also is correct that Ninth Circuit case law does not require submission of a proposed supplemental

20  pleading.

21      Thus, while the Court would have preferred it had Paul Jr. submitted a proposed

22  supplemental pleading, the Court will not deny the motion on that basis.  The motion to

23  supplement identifies the facts that Paul Jr. seeks to add to his RICO claim with sufficient

24  particularity to allow the Court to evaluate his motion.  The Court observes that if it were to deny

25  the current motion on the basis that Paul Jr. failed to submit a proposed supplemental complaint,

26  he could file a renewed motion curing that defect.  Such a motion likely would be granted given

27  the early stage of this litigation and the Court's evaluation of the *Foman* factors, above.  No point

28  would be served by requiring Paul Jr. to go through that exercise.

United States District Court
Northern District of California

The Court observes that Paul Jr. asks for leave to add allegations regarding the two identified Probate Court petitions "and similar conduct that has occurred after the filing of the original complaint."  Pl.'s Mot. to Suppl. at 4.  The Court cannot evaluate a request to supplement the complaint with "similar conduct" that is not described with particularity.  Leave to supplement is limited to allegations regarding the August 5, 2021 and January 20, 2022 Probate Court petitions, and the circumstances surrounding the filing of those petitions.  The Court takes seriously the Stouky Defendants' concern that Paul Jr. will seek leave to add allegations to his pleading in this lawsuit every time he receives an unfavorable ruling in the Probate Court.  The Court advises Paul Jr. that it will not look favorably on any future requests to supplement, and that any allegations in the second amended complaint that go beyond the scope of the leave granted in this order will be stricken.

The Stouky Defendants argue that Paul Jr.'s motion is not supported by sufficient evidence, citing Civil Local Rules 7-2(d) and 7-5, which require that factual contentions be supported by an affidavit or declaration and appropriate references to the record.  The Stouky Defendants cite no authority indicating that these provisions apply when a plaintiff seeks leave to supplement his pleading with new allegations.  Paul Jr. need not supply proof of his factual allegations at this stage of the proceedings, he need only demonstrate that he should be permitted to include those allegations in his second amended complaint.  He has done so with respect to Bye and Martin.

In summary, Paul Jr.'s motion to supplement his pleading is GRANTED IN PART AND DENIED IN PART.  When he files his second amended complaint, Paul Jr. may support his RICO claim with new allegations against Bye and Martin arising from the filing of the August 5, 2021 and January 20, 2022 Probate Court petitions.  Paul Jr. may not include new allegations regarding any other events that occurred after the filing of this lawsuit, and he may not name Nguyen as a defendant.

//

//

//

**IV.   ORDER**

(1)   The Stouky Defendants' motion to dismiss the FAC is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND, as set forth above.

(2)   Paul Jr.'s motion to supplement his pleading is GRANTED IN PART AND DENIED IN PART, as set forth above.

(3)   Paul Jr. is granted until September 14, 2022 to file a second amended complaint consistent with this order.  The second amended complaint may not add new claims or parties without prior leave of the Court.

(4)   As stated on the record at the hearing on the Stouky Defendants' motion to dismiss, any future motions to dismiss will be subject to the following limits.  All parties may join in a single 15-page motion brief, and each separately represented group of defendants may file an additional 5-page brief.  The additional 5-page brief may be donated to the shared brief, but not to another group of defendants.  The opposition brief is limited to the total number of pages filed by the moving parties.  And the reply brief or combination of briefs is limited to 15 pages.

(5)   The Court reserves decision on whether to decline or accept supplemental jurisdiction over the state law claims and Defendants may raise this issue in a future motion to dismiss.

(6)   This order terminates ECF 66 and 146.


Dated:  August 15, 2022

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

26